UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**CHARMEL SANCHO &**  **CIVIL CASE NO.: 2:23-cv-994**
**MIKE SANCHO**

**VERSUS**

**MCCLENNY, MOSELY, &**  **SECTION:**
**ASSOCIATES, PLLC**

## COMPLAINT FOR DAMAGES DUE TO BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, AND LEGAL MALPRACTICE

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs, **Charmel Sancho** and **Mike Sancho**, who respectfully move this Court as follows:

1.

Made Defendant herein:

1. **MCLENNY, MOSELY, & ASSOCATES, PLLC** ("MMA"), a foreign corporation authorized to do and doing business in the State of Louisiana that can be served through its agent for service of process, William Huye 1820 St. Charles, Ave. Suite 110 New Orleans, LA 70130.

### JURISDICTIONAL ALLEGATIONS

2.

The Court has diversity jurisdiction over this matter in accordance with 28 U.S.C. § 1332.

3.

The Plaintiffs are citizens of the State of Louisiana. On information and belief, MMA is a corporation that is both incorporated and with its principal place of business in the State of Texas. Complete diversity between the parties exists.

4.

The amount in controversy exceeds $75,000.00.

5.

Plaintiffs allege that upon being solicited through mail by MMA, Charmel Sancho on or about February 22, 2022, signed an Attorney Employment Contract with MMA for an insurance dispute with State National Fire Insurance Company due to damage from their home from Hurricane Ida. This contract was never signed by an attorney with MMA, and Charmel Sancho has never met with an attorney from MMA.

6.

Plaintiffs allege that after signing the contract, an adjustor hired by MMA, Global Estimating Services and Associates, (G.E.S.) came to the Sancho home to conduct an inspection. This adjustor's inspection revealed replacement cost value damages to be $201,435.80.

7.

Plaintiffs allege that on or about October 27, 2022, they received a phone call from a non-attorney at MMA advising them to come in and sign their settlement document.

8.

Plaintiffs met with a non-attorney employee at the New Orleans office of MMA on or about October 28, 2022. Plaintiffs allege that Mrs. Sancho was displeased with the proposed settlement amount, never authorized settlement at the amount shown, and asked to speak with an attorney regarding the settlement. Mrs. Sancho was not allowed to speak to an attorney regarding the proposed settlement. Mrs. Sancho was pressured to sign the release of the Louisiana Insurance Guaranty Association ("LIGA") and/or State National Fire Insurance which she did so for a final settlement amount of $47,455.66.

9.

Plaintiffs allege that at no time did Mrs. Sancho ever meet with an attorney, at no time was her settlement ever explained to her, at no time was she provided a breakdown of funds or explanation of how much she would receive prior to signing the settlement document. In short, she received no advice from an attorney whatsoever.

10.

Plaintiffs allege that they were subsequently contacted to sign a settlement disbursement. Plaintiffs allege that on reviewing this disbursement, the amount paid by LIGA was less than the amount for which the release was signed. The Sanchos allege that the release was for $47,455.66 in new money. LIGA only sent $34,900.00. Plaintiffs received no explanation on the discrepancy despite multiple requests, and never signed the settlement disbursement.

11.

Plaintiffs allege that they have reached out to MMA multiple times since October of 2022, and never received a response from an attorney.

12.

Plaintiffs subsequently asked MMA where their funds are, what was happening with their claim, and requested a complete copy of their file.

13.

The only thing the clients received from this request to MMA was the following:

1. A copy of a release of LIGA and State National Fire Insurance Company signed by Charmel Sancho in the amount of $47,455.66;

2. A copy of a check from LIGA in the amount of $3,500.00;

3. A copy of a check from LIGA in the amount of $31,400.00;

4. An unsigned word document disbursement reflecting funds received from LIGA in the amount of $34,900.00.

14.

Plaintiffs again requested a complete copy of their file including an explanation regarding the rest of the settlement funds owed by LIGA.

15.

MMA then requested that Plaintiffs give them two weeks to email a copy of the file.

16.

William Huye, Louisiana Managing Partner of MMA, responded on February 20, 2023. Mr. Huye first attempted to place the blame on the Sancho's mortgage company, Wells Fargo, and then attempted to blame the Sancho's that nothing had been done to disburse the funds. Mr. Huye stated that Wells Fargo refused to endorse the check, and the Sancho's refused to sign the settlement disbursement. Mr. Huye also stated MMA could not send a check to Wells Fargo until Wells Fargo put in writing that it would endorse the check and send it back. Plaintiffs allege that this is not the proper way to handle a mortgage company in an insurance claim. Mr. Huye then asked that Plaintiffs give MMA two weeks to secure an endorsement from Wells Fargo. Mr. Huye also included a link alleged to be a complete copy of the Plaintiffs' file.

17.

Plaintiffs again requested MMA to answer their previous questions regarding the file. Upon information and belief, Plaintiffs allege that MMA sat on their funds for over three months and did absolutely nothing until being prompted by these communications. At no time, did anyone, including any attorney from MMA, ever communicate any strategy or advice, or give any update to the Sanchos.

18.

Mr. Huye responded that "the check was sent to Wells Fargo in a large packet of checks" and would "work to collect a tracking number". To date, no tracking number or proof of mailing has ever been provided.

19.

Upon examining the file provided via electronic link sent by MMA on February 20, 2023, it was discovered that the file contained a multitude of information from numerous other clients in Florida. As far as the Sanchos were concerned, there were very few additional documents provided. There was no documentation of mailing of checks to Wells Fargo, no correspondence with LIGA or State National Fire, no communication with the Sanchos, and the file provided did not even contain a copy of the Sancho's policy or declarations page.

20.

After examining the "file", the Sanchos yet again sent a list of questions and requests to MMA. Mr. Huye responded that he had no other information in the file.

21.

Plaintiffs allege that MMA negligently negotiated a settlement with LIGA without ever having seen the Sancho's policy or their coverage. Plaintiffs allege that MMA negotiated a settlement that was $70,145.00 under their $117,600 policy limit despite having an estimate from an adjustor that was almost $84,000 above policy limits. MMA did not even file a lawsuit on Plaintiffs' behalf, despite the wide disparity in damages, and negligently represented the Sancho's without diligence or competency.

22.

Plaintiffs allege that MMA has attempted to recoup $2,500 in expenses on their case which was allegedly paid to G.E.S. for their estimate. However, MMA does not have proof of this payment to G.E.S. in their file.

23.

Due to the actions of the Defendant, Plaintiffs have been unable to make a single repair to their home, still do not live in their home, and have endured (and continue to endure) a multitude of hardships.

24.

Plaintiffs allege that as it has been 19 months since the hurricane, and no repairs have been made, as they have not received any funds from their insurance company, nor LIGA. The condition of the home has deteriorated to a point that is far worse than the damages caused by Hurricane Ida. Plaintiffs allege that this is partially due to the actions of MMA.

25.

Plaintiffs further allege that they care for their fully disabled son, Andrew Sancho, whose care has been negatively affected by his inability to return to his home.

26.

Plaintiffs further allege that upon information and belief, MMA has been suspended from the practice of law in the Western District of Louisiana due to similar actions, and that Mr. Huye, has been suspended from the practice of law in Louisiana entirely, with the Office of Disciplinary Counsel appointing a trustee in an attempt to protect MMA's clients throughout Louisiana. The attorney who was believed to be originally handling their case, Mr. Claude Reynaud, seems to

have left the firm with no communication to the Sanchos. The Sanchos have no idea where there money is, or if they even still have an attorney representing them on their hurricane claim.

27.

It is alleged that at the time of said incident, MMA had a policy of insurance with an unknown insurance company that provided liability and/or Errors and Omissions coverage for MMA. Therefore, defendants MMA, and their insurance company, are liable in *solido*, severally and jointly for the negligence of the defendant in the main, but not exclusively, for the following acts or omissions and complete institutional failure, to-wit:

    a.    Breach of contract;

    b.    Breach of fiduciary duty;

    c.    Negligence;

    d.    Deceptive Trade Practices;

    e.    Consumer Fraud;

    f.    Breach of the duty of standard care;

    g.    Failure to exercise competence and diligence normally exercised by attorneys in similar circumstances;

    h.    Failure to communicate with the client;

    i.    Failure to establish policies and procedures for communicating with clients;

    j.    Failure to establish or follow policies and procedures for sending three party checks to mortgage companies;

    k.    Failure to properly educate the client regarding settlement;

    l.    Failure to properly supervise and monitor non-lawyer staff;

    m.    Failure to properly and/or adequately train employees;

    n.    Misappropriation of funds;

    o.    Fraudulent billing/expensing practices;

    p.    Inadequate investigation or discovery;

    n.    Breach of ethical and moral obligations;

    o.    Any and all other acts of negligence, strict liability and/or omission committed by defendant to be proven at the trial of this matter.

28.

Plaintiffs show that as a result of the allegations above, they have sustained damages including, but not limited to the following:

    a.    Loss of enjoyment of life;

    b.    Mental anguish;

    c.    Emotional Distress;

    d.    Condemning of their home by the city and/or Parish;

    e.    Fines from the City and/or Parish for not having yet made any repairs to their home;

    f.    Additional Living Expenses;

    g.    Rise in building material prices due to delay;

    h.    Depression; anxiety;

    d.    Past, present and future travel expenses;

    e.    Diminution in value of their home;

    f.    Loss of consortium;

    f.    Any and all other damages which shall be proven at trial.

29.

WHEREFORE, Michael and Charmel Sancho, pray that defendant, McClenny Mosely and Associates, PLLC be served with a copy of this complaint and required to answer same within the delays provided by law, duly cited to appear, and that after all due proceedings be had, there be judgment in favor of Plaintiffs, and against the Defendants named herein *in solido*, for such damages as are reasonable in the premises, together with legal interest thereon from date of judicial demand until paid, for all costs of these proceedings, including expert witness fees, and for all general and equitable relief as this Court deems fit.

**FURTHER**, Plaintiffs pray for trial by jury.

Respectfully submitted,

DEJEAN & NOLAND LAW OFFICE, LLC

/s/ Erik R. Noland
Erik R. Noland (#37245)
Felix "Andy" DeJean IV (#25028)
Sherry C. Cannon (#33759)
604 St Ferdinand St.
Baton Rouge, LA 70802
(225) 344-2639 – Telephone
(225) 346-5252 – Facsimile
erik@dejeannoland.com
andy@dejeannoland.com
*Attorneys for Michael and Charmel Sancho*

**SERVICE INSTRUCTIONS:**

**McClenny, Mosely, and Associates, PLLC**
Through its Agent for Service of Process:
William Huye
1820 St. Charles, Ave. Suite 110
New Orleans, LA 70130.